## SMITH, TWOGOOD & CO. v. COOPERS & CLARKE.

1. ATTACHMENT AGAINST ONE OF SEVERAL DEFENDANTS. An attachment may be issued against the property of one of several defendants, when the affidavit of cause for the attachment shows that he is a non-resident of the State, and that his co-defendants are insolvent.

2. ACTION AND JUDGMENT ON JOINT AND SEVERAL INSTRUMENTS. Under the Code, the parties to joint and several instruments in writing, may all, or any of them, be made parties to an action to enforce it, and judgment may be rendered against one or more before the case is ready for decision as to all, when such a judgment will not prejudice the rights of any of the parties.

3. JOINT AND SEVERAL PROMISSORY NOTE. In an action on a joint and several promissory note, judgment may be rendered against one party and the cause continued as to others, and the judgment will not be a bar to plaintiff's cause of action against the others.

4. LEVY OF ATTACHMENT: APPRAISEMENT. An appraisement of the property levied upon, is not necessary to complete the levy of a writ of attachment.

5. OPENING AND CLOSING ARGUMENTS. The appellate court will not interfere with the ruling of the court below in determining the rights of the parties as to the opening and closing of a case to the jury, unless a palpable and manifest abuse of discretion is shown.

6. NO PREJUDICE. When the record discloses that the appellant was not prejudiced by the erroneous exclusion of evidence from the jury, the judgment will not be reversed.

7. USURY CANNOT BE RECOVERED BACK. Usurious interest once paid, cannot be recovered back.

8. USURY: STATUTE CONSTRUED. The word contract, in section 5, chapter 37, Laws Fourth General Assembly, (1852-3) refers to the original agreement or contract in which the debtor stipulated to pay interest at usurious rates; it is not limited to the note or written evidence of that contract.

9. USURIOUS CONTRACT: CREDITS. When payments have been made upon a usurious contract, and the creditor brings an action to enforce the collection of the balance, such payments will be applied upon the amount legally due, excluding the usury, from the amount originally contracted to be paid.

10. WHAT PARTY MAY COMPLAIN. A party not prejudiced by the ruling of the court, cannot complain of such ruling, on appeal.

11. RULE FOR THE COMPUTATION OF INTEREST. In computing interest, where partial payments have been made, such payments are applied, in the first place, to the discharge of the interest then due. If the payment exceeds the interest, the surplus goes toward discharging the principal, and the subsequent interest should be computed on the prin-

cipal then remaining due. If the payment be less than the amount of interest then due, the balance of interest remaining unpaid, will not be taken to augment the principal, but interest will continue on the principal until the payments, taken together, exceed the interest due, when the surplus, if any, will be applied to the discharge of the principal; when interest will be computed on the balance of principal as aforesaid.

12. SAME AS TO FORFEITED INTEREST. The interest forfeited to the State upon a usurious contract, should be computed upon the amount due from time to time after the application of payments, the computation being made in accordance with the above rule.

*Appeal from Linn District Court.*

THURSDAY, OCTOBER 20.

This was a proceeding to recover an amount claimed to be due upon a joint and several promissory note. The note assigned by Shinn, Boynton & Co., and the defendants, by the firm name of Coopers & Clarke; was for the sum of $6,833.90, due thirty days after date; and stipulating that "if not paid promptly when due, we, or either of us, promise to pay a penalty of three per cent per month, after due, till paid, payable monthly." Before suit, there had been paid, as shown by the credits on the note, the sum of $2078.65. Judgment was rendered against defendants in favor of plaintiffs for $2848.89, and in favor of the State for the use of the School Fund, for $435.27. Defendants (Coopers & Clarke) appeal. For the other material facts, see the opinion.

*W. Penn Clarke*, for the appellants.

*Smyth, Young & Smith*, for the appellees.

WRIGHT, C. J.—The action was against all the makers of a joint and several promissory note, and an attachment was asked and obtained against the property of a part of them. The affidavit sets out that Shinn, Boynton & Co. are insolvent, and that the other defendants, Coopers & Clarke, are *non residents* of the State. The question is, had the plaintiffs the right to an

attachment against some of the defendants, all the others being *insolvent.* We are clear that they had. It was so held in *Ogilvie* v. *Washburn,* 4 G. Greene 548, and there is nothing in *Courrier* v. *Cleghorn,* 3 Ib. 523, nor in *Patterson* v. *Stiles,* 6 Iowa 54, conflicting with this view. The argument that plaintiffs were not entitled to such process, unless it was necessary to secure their claim, cannot avail defendants, if true, for the affidavit shows that precise state of facts. Whether, a part of the makers of such a note being solvent, an attachment could be procured against the property of the others, we do not undertake to decide. We only hold that it may issue, the insolvency of the others being shown. *Chittenden & Co.* v. *Hobbs, et al, infra.*

Judgment by default was taken against Shinn, Boynton & Co., at the first term after the commencement of the action, and the cause continued as to the other defendants. After this, the attachment issued, and one ground for the motion to dissolve, was, that the liability of Coopers & Clarke upon the note, was merged in that judgment, and that upon the note they were no longer liable, and no proceeding could be predicated upon such liability against them. The same question is made in so much of appellant's argument as relates to plaintiff's demurrer to portions of the answer setting up this same matter in bar of the action.

The law is, that persons jointly and severally liable on the same instrument, may all, or any part of them, be· sued at once; that judgment may be rendered for, or against, one or more of several plaintiffs or defendants; and that this may be done against one or more before the case is ripe for decision as to all, when such a·course will not unjustly prejudice the interests of other parties. Code, sections 1682, 1815–16. We are clearly of the opinion that, under these provisions of the Code, judgment may be rendered against one of the makers of a joint and several promissory note; that the cause may be continued as to the others, and that such judgment will not bar the plaintiff's right to recover against the other parties when the cause is ripe for disposi-

tion as to them. The doctrine of merger and of the release of one of the makers of a note by taking judgment against the other, contended for by appellants, has no application in causes of this character under our statute. Nor do the New York cases cited, hold any contrary rule.

It is also claimed that the court erred in refusing to set aside the levy of the attachment as returned by the sheriff. The point made and now presented is, that the property attached was not *appraised* by the sheriff. Our law does not require this in order to make a good levy or service. Section 1860 of the Code prescribes the manner of attaching; but an appraisement is not one of the requisites, and then section 1877, in providing for an appraisement in a given state of case, negatives, very clearly, the conclusion that it is necessary in every instance or in any instance, as a part of the mode of attachment. And this view is very much strengthened by the language of section 1880. This clearly contemplates cases in which there is no appraisment, and others where there may be. The latter cases are those where a delivery bond is given as provided in section 1876.

It is next assigned that the court erred in refusing the defendant's counsel the right to open and close the case before the jury. This is a matter of practice, resting so peculiarly in the discretion of the court below, that we should not interfere with its exercise, unless there was a much greater abuse of it than there seems to have been in this instance.

Defendants plead usury and set up that at the date of the promissory note sued on, Coopers & Co. were indebted to plaintiffs in the sum of $7000.35, as evidenced by eleven promissory notes, copies of which are given in the answer; that these notes were endorsed by Coopers & Clarke; that Shinn, Boynton & Co. assumed the the payment of these notes, and were liable to pay the same; that on the 14th of March, 1857, (the date of the note sued on,) they came to a settlement as to the amount due on said eleven notes, as also a bank account owing by Shinn, Boynton & Co. to plaintiffs, and that there was then found due as principal $7204.07,

and as interest $2343.41, the said interest on said notes and account being calculated, at the rate of three per cent per month; the same being added to the principal and compounded monthly at that rate, making in the aggregate the sum of $9547.48. It is then averred, that on said 14th of March, 1857, it was corruptly agreed, that plaintiff should give day of payment to said Shinn, Boynton & Co., on said sum for thirty days, to which should be added interest at three per cent per month, for said thirty days; that the interest was so added, and two notes executed, one for three thousand dollars, and the other for $6833.90—the latter being the note now in suit. The three thousand dollar note was paid before the commencement of this action.

On the trial, one of the defendants was offered as a witness to sustain the plea of usury, and asked this question: "State whether or not the defendants, Shinn, Boynton & Co., and the said Coopers & Clark, entered into an agreement, whereby the said Shinn, Boynton & Co. assumed the payment of the said eleven promissory notes (referring to those made by Coopers & Co., and set out in the answer); if so, state what that agreement was." To this question, plaintiffs objected, and thereupon defendants' counsel stated that their object was to show the existence of the agreement between the defendants, and to show by said witness that plaintiffs assent to the same, and that they regarded and treated the said Shinn, Boynton & Co. as principals. The objection was sustained, the court holding that the witness was competent to prove the usurious agreement, but not that referred to in the interrogatory.

The question here made is, for this case, of no practical importance. For, granting that the testimony was competent, defendants were not prejudiced. The bill of exceptions recites that other witnesses were permitted to, and did testify to the same matter. Indeed the record shows that the agreement was but little, if any, controverted, throughout the entire case; and though not established, we cannot see how it was material if the usurious contract was shown, and to prove this there seems to have been no objection to the

competency of the witness.  Not only so but the verdict shows conclusively that the jury found that such an agreement was made, and more than this the defendants could not ask, on a second trial, granting the competency of the testimony offered.

The defendants asked the following instructions:  " *First*, If the jury believe from the evidence, that the $3000 note mentioned in the answer, has been paid, the contract being usurious, the two notes are to be treated as one transaction, and in arriving at the sum due on the note now in suit, the jury will ascertain the sum due on the face of the said eleven notes and bank account; that is the sums for which said eleven notes were executed, and the amount of the bank account; that from the aggregate amount of said notes and account, they will deduct the $3000, alleged to have been paid, and also the sums credited on the note now in suit, and that the difference between the two sums, will be the true amount of the principal sum now due on the note now in suit.   *Second*, That the jury have nothing to do with reference to the amount to be rendered as a judgment against the defendants for the forfeited interest;  that being a matter for the court, after the finding of the verdict, on the plea of usury."

These instructions were refused and the following given in their stead:

"The jury cannot deduct from the note now in suit, the usurious interest included in the other note which had been paid; that the word contract, as used in the statute, regulating interest on money, referred to the contract on which the suit was brought, to-wit, the note, and not the contract or agreement under which the two notes were made; that the jury, in arriving at the unlawful interest in this note, must ascertain the unlawful interest in both, and make this one bear its just proportion of said unlawful interest; that they would find the amount of forfeited interest (if the contract was usurious) to the school fund, for which judgment was to be entered against defendants."   To the giving and refusal of these instructions, defendants excepted, and this is the next question presented for our consideration.

Six per cent is the rate of interest allowed by our law, in the absence of express contract. Parties may agree, in writing, for the payment, of not exceeding ten cents on the hundred by the year. The prohibitory clauses of the statute are substantially as follows: No one shall, directly or indirectly, receive any greater rate of interest than is in the act prescribed. In · any suit brought on any contract, if it shall be ascertained that a rate of interest has. been contracted for, either directly or indirectly, greater than the law authorizes, the same shall work a forfeiture of ten per cent per annum upon the amount of such contract, to the school fund of the .county in which the suit is brought, and the plaintiff shall have judgment for the principal sum, without either interest or costs. The court is to render judgment for the forfeited interest, in favor of the State for the use of the school fund, against the defendant, and in no case, where unlawful interest is contracted for, shall the plaintiff have judgment for more than the principal sum, whether the unlawful interest be incorporated with the principal or not. Laws of 1853, p. 67–8. It will be observed that our law does not declare the whole contract, when tainted with usury, void, but allows the plaintiff to recover his principal, without interest or costs, and requires the defendant to pay ten per cent to the school fund. Nor where such usurious interest has been once paid, can it be recovered back. The courts will not, however, give their aid to a party to enable him to recover such interest, when he seeks judgment upon his note or contract. The question then is, what is meant by the word contract as here used? We incline to the opinion, and so hold, that the spirit and policy of the law is, that it means the agreement, or contract by which the usurious interest is reserved, and not simply the note or notes, which may more strictly be called the evidence of the contract— not that the notes are by any means to be taken as the entire or conclusive evidence of the contract, but as the written testimony which *prima facia*, show the amount owing, and the sufficiency or validity of the consideration.

When the note is sued, the law permits the maker by his own oath, to go back of it and show the consideration, if usurious.   He is thus allowed to testify to the *contract*, and it is *this* contract which is to be passed upon and its character determined.   And if in a suit thus brought, it shall appear that a rate of interest greater than that authorized by the act, has been *contracted* for, either directly or indirectly, the same shall work a forfeiture of ten per cent per annum upon the amount of such *contract*.   Now in this case what was the contract?   The answer is, not alone that evidenced by this note, but the agreement to pay the amount of the eleven notes and bank account, with interest at three per cent per month, an amount evidenced by the note paid as well as this one.   The *contract* was entire, and if money has been paid upon it, it should be applied to the discharge of that which the party was legally bound to pay, and not that which was illegal and usurious.

Now if our law declared the contract void *in toto*, by reason of the taint of usury, the rule is, that such contract if made by two instruments, one promising to pay the principal, with lawful interest, and the other promising to pay the usurious interest as principal, both instruments are void.   They are void, because, as the authorities hold, both together form one contract.   2 Par. Contr. 390 and note *g*.   And in some cases it is held that if there be a note valid in itself, and a separate oral promise to pay usurious interest, both are void. Par. *supra* and note *h;*   *Warren* v. *Crabtree,* 1 Greenl. 171; and contra, *Butterfield* v. *Kidder,* 8 Pick. 512.   "If," says Mr. Parsons, "the design of the whole transaction, and the inducement to it, are to lend money on usurious interest, the taint of usury, (according to the prevailing rule,) effects the whole and every part of the contract, and no one portion thereof, although in form, an independent contract, is made valid by the fact that taken by itself, it is free from objection.   The very fraud consists in disguising usury by separating the contract into these parts."   It is true that our law, as we have seen, does not expressly declare the contract

shall be wholly void; "but the same end is reached, and the same effect is given to its provisions by declaring that *in no case*, where unlawful ·interest shall be contracted for, shall the plaintiff, in a suit brought upon the contract, have judgment for more than the principal sum loaned." *Bacon v. Lee & Gray*, 4 Iowa 490. And therefore, if an action should be brought upon two notes, one given for the sum loaned and the other for the illegal interest reserved, the recovery would be, not upon the one note for the plaintiff, and for the defendant upon the other, but the contract would be treated as a whole, and judgment rendered for plaintiff, *for the principal sum loaned*, precisely as if there had been but one note.

But the argument is that the $3000 note, with its proportion of illegal interest has been paid; and such interest cannot be recovered back. Treated as an action on the part of defendants to recover the illegal interest paid, this position is correct. But is it right to thus treat it?

Courts of justice will always, when appealed to, if in their legitimate power, prevent the perpetration of wrong or fraud. If a wrong has been meditated and partly or entirely accomplished, a remedy should·be furnished as far as consistent with the rules and practice of courts. When the contract under which the fraud was perpetrated, and which has been in part performed, is brought before them by the immediate parties to it, for further enforcement, reason, good morals as well as law, dictate that as far as possible, the wrong should be made right; and that the means received on account of the fraud should be returned. And if the guilty party seeks the aid of a court for the further enforcement of his contract, he is in no position to complain, if compelled to account for his ill-gotten gains, received upon such fraudulent and illegal contract. Not only so, but it shall always be intended that if money is paid, it shall be applied to the discharge of that which the debtor was *legally* owing, and not upon that which (so to speak) he was owing *illegally*.

And therefore treating the contract in this case as entire, and the notes as the evidence or fruit of the contract, if

money has been paid, the law, in the absence of proof to the contrary, applies it upon the valid, and not the void part of the contract. It might as well be claimed that the amount credited upon this note, was to be applied to the discharge of the illegal interest, and the plaintiffs could recover their principal sum without deducting all of said credits, as that any part of the $3000 paid, should go to the liquidation of the usurious part of the note for that amount. But the language of the statute is, that no person shall directly or indirectly *receive*, in any manner, more interest than is therein prescribed. Now, if the plaintiffs recover (with the amount paid them on the same) the principal sum included in the note, will they not, by the action and judgment of the court *receive*, not indirectly, but directly, usurious interest upon their contract—the very contract on which they rely for judgment? From the conclusion that they will, it seems to us there is no escape. And if this would be the effect of the rule recognized by the court below, argument would seem unnecessary, to demonstrate its erroneousness.

But finally, on this part of the case, this contest is triple, there are three parties to it. The State, as the trustee for the school fund, has a right to the forfeited interest, and it is the duty of the court to render judgment therefor, when ascertained, whether the suit is contested by the defendant or not. This interest, it is to be observed, is ten per cent per annum *upon the amount of such contract*. In a case pending in court, based upon such contract, the school fund is entitled to this forfeiture, as much as the plaintiff is to his principal sum, or the defendant to be released entirely from any amount over and above the principal and ten per cent interest. If, then, the defendant has paid a portion of the debt, whether upon the note in suit, or another instrument in part the evidence of the contract, is the State to recover the forfeited interest upon the principal sum included in the note before the court, or in the language of the

law, *ten per cent per annum upon the amount of such contract?* It seems to us the latter. Our law upon this subject is peculiar. While the plaintiff is to realize no profit when he appeals to a legal tribunal, from his illegal contract, the defendant does not escape by paying the sum loaned. He pays interest, but it is in the nature of a forfeiture to the school fund, instead of a sum to the lender for the use of his money. And the payment of this interest he can no more escape than the principal. And yet he would escape it, in part, if the contract is treated as divisible, and he should be required to pay the forfeited interest upon so much of the sum loaned as may have been included in the note before the court. If it be said that defendants have so paid it to the plaintiffs, in this case, the answer is that *they* had no legal right to *receive* it, and it now being in the power of the court, to give to all parties their legal rights, it should be done. Entertaining these views of the law, we think there was error in the instructions given upon this subject, and in refusing to give that asked by defendants, and for this the case must be reversed.

It is further objected, however, that the court erred in instructing the jury upon the subject of the forfeited interest, against defendants' objection, after they had once returned a verdict, and in sending them back to again examine the subject. There was no error in this, certainly, of which the appellants can complain. The verdict, as first returned, required defendants to pay to the school fund about $1100, whereas that returned after the instruction objected to, was for more than $600 less. The State might complain if there was error in this proceeding, but not the defendants.

But it is claimed that the amount of such forfeited interest should have been found by the court, and that it is erroneous to submit the assessment of the same to the jury. We are not aware that any valid objection exists to the course pursued in this instance. It is a question of fact, depending, it may be, upon calculation, after the amount of the contract is ascertained, and as such may, very appropri-

ately, be left to the jury. The data for the assessment will usually be so abundant and manifest to the court, that an error on the part of the jury can be readily detected.

Finally it is urged that the court erred in the rule given to the jury, as to the method of calculating this interest. It seems that the rule adopted, was that recognized in *Huner* v. *Doolittle*, 3 G. Greene 76. This rule is that stated by the Chancellor, in *Connecticut* v. *Jackson*, 1 John. Ch. 13 ; and is this : " When partial payments have been made, such payments are to be applied, in the first place, to the discharge of the interest then due. If the payment exceeds the interest, the surplus goes towards discharging the principal, and the subsequent interest is to be computed on the balance of principal remaining due. If the payment be less than the interest, the surplus of interest must not be taken to augment the principal, but interest continues upon the former principal until the period when the payments, taken together, exceed the interest due, and then the surplus is to be applied towards discharging the principal, and interest is to be computed on the balance, as aforesaid." This rule is adopted in *Dean* v. *Williams*, 17 Mass. 417 ; *Williams* v. *Houghtaling*, 3 Cowen 87, and is said by Mr. Parsons, in his excellent work upon contracts, (Vol. 2 p. 147) to generally prevail. It recommends itself to us as being more reasonable and just than any other method suggested, and we feel justified in saying that it has been generally adopted by the business men of our State. *Livingston* v. *Story*, 3 Pet. 471 ; *U. S.* v. *McLeman*, 4 How. 288.

The only question, then, is whether a different rule is to be adopted where the interest goes to the State, as in this case. And we may premise by saying that if any change is to be made, it would be unfavorable, rather than favorable, to the parties here complaining. The strict, literal language of the act would require the party promising, to pay the ten per cent *upon the amount of the contract*, and whether this amount is to be determined from the sum loaned or that agreed to be paid, would give him no advantage from payments made.

Our opinion is, however, that the contract for the purpose of computing interest, is to be treated as though the ten per cent was going to the plaintiff instead of the State. The *amount* of the *contract*, is that *due* from time to time after the application of the several payments—the only differene being that the interest goes to the State and the principal to the plaintiffs If half of the valid debt is paid, then the other half is the *amount of the contract*, according to the spirit, and as we believe, the letter of the Statute.

There was no error, then, in the rule adopted for computing interest. For the error in the instructions, however, the case is reversed and remanded.