ARTLEY v. MORRISON ET AL.

1. **Agency**: PAYMENT TO ONE NOT AN AGENT OF PAYEE. C. took some part in the negotiation of a loan made by defendant, and which was secured by a mortgage to her. She had no knowledge of C., but employed one D. to look after the business for her. D. employed S. & T., attorneys, to write dunning letters, and they addressed their letters to C., whom they somehow supposed to be acting for the mortgagor. C. procured the installments of interest from year to year from the mortgagor and from his grantee of the land, and they found their way through him into the bank where the note was payable. Finally the grantee of the land paid the principal to C., but he failed to remit. *Held* that such payment did not bind the defendant, as C. was not her agent or sub-agent by appointment, and she did not hold him out as her agent.

*Appeal from Montgomery District Court*—HON. J. W. HARVEY, Judge.

TUESDAY, OCTOBER 25.

ACTION in equity to obtain the cancellation of a note and mortgage, and the surrender of the same. The defendant, Missouri B. Morrison, the mortgagee, filed a cross-petition, praying for the foreclosure of the mortgage. The court dismissed the plaintiff's petition, and granted a decree of foreclosure as prayed by the defendant in her cross-petition. The plaintiff appeals.

*S. McPherson* and *J. M. Junkin*, for appellant.

*Baylies & Baylies*, for appellee.

ADAMS, CH. J.—The land in question was formerly owned by one Dill. He executed the mortgage to the defendant Morrison, to secure a note given for money which he borrowed of her. Afterwards he sold the land to the plaintiff. The plaintiff claims that the note has been paid. This the defendant Morrison denies. The fact appears to be that the plaintiff paid the amount necessary to discharge the note and mortgage to one Creighton, upon the supposition that he was the agent of the mortgagee. Creighton did not remit, and

the question is as to whether payment to him is to be deemed payment to the mortgagee. Such payment would be in law payment to the mortgagee, if Creighton was authorized by the mortgagee to receive the money for her, or if she had held him out in such a way that the plaintiff was justified in supposing that he had authority from the mortgagee to receive the money.

The note was made payable at the First National Bank of Westfield, New York. For several years the interest upon the note had been paid into the bank through Creighton, who, it appears, took some part in the outset in the negotiation of the loan to Dill. But it does not appear that the mortgagee knew how the money had been paid into the bank for her, or had any personal knowledge of Creighton at any time. She employed one Dinsmore to look after this business for her, and, so far as we can see, no one else. Dinsmore employed a law firm by the name of Smith & Tenant to write dunning letters. They addressed their letters to Creighton, evidently supposing that he was acting for Dill, the maker of the note and mortgage. Creighton seems to have communicated with Dill or plaintiff, or both; and the interest from year to year, and finally the money necessary to discharge the note and mortgage, were paid to him; and while the several amounts paid as interest from year to year found their way through Creighton into the bank where the note was payable, the principal, when paid, did not. We do not think that we should be justified in holding 'that the mortgagee made Creighton her agent, or that she held him out as such. She certainly made no direct appointment of him, and we do not see that he was appointed as sub-agent by any agent authorized to make such appointment, nor was there any ratification of his acts, because she had no knowledge of them.

We think that the decree of the district court must be

AFFIRMED.